# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

No. 22-13880-HH
_____

BOYAN SUBOTIC,
Appellant,
v.
JABIL INC.,
Appellee.
_____

On Appeal from the United States District Court
Middle District of Florida, Tampa Division
Case No.: 8:21-cv-2137-VMC-SPF
_____

## APPELLEE'S ANSWER BRIEF
_____

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.

William E. Grob
Florida Bar No. 0463124
william.grob@ogletree.com
100 North Tampa Street
Tampa, Florida 33602
Telephone: (813) 289-1247
Facsimile: (813) 289-6530

Christina M. Kamelhair
Indiana Bar. No. 32457-49
christina.kamelhair@ogletree.com
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone: (317) 916-2144
Facsimile: (317) 916-9076

# CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellee provides the following Certificate of Interested Person and Corporate Disclosure Statement:

1.  Covington, Hon. Virginia – District Court Judge

2.  Creed III, Dennis A. – Former Counsel for Appellee

3.  Creed Law Group, PLLC d/b/a Creed & Hall – Law Firm of Former Appellee's Counsel

4.  Flynn, Hon. Sean – Magistrate Judge

5.  Grob, William E. – Counsel for Appellee

6.  Hall, Bradley R. – Former Counsel for Appellee

7.  Jabil, Inc. a/k/a Jabil Circuit, Inc. (NYSE Symbol: JBL) – Appellee

8.  Kamelhair, Christina M. – Counsel for Appellee

9.  Ogletree, Deakins, Nash, Smoak & Stewart, P.C. – Law Firm of Appellee's Counsel

10. Subotic, Boyan – Appellant

11. Thorpe, Shaina – Counsel for Appellant

12. ThorpeLaw P.A. – Law Firm of Appellant's Counsel

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Boyan Subotic has requested oral argument. However, oral argument in this case is unnecessary, as the issues raised on appeal are straightforward and fully briefed.

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...................................................................1

STATEMENT REGARDING ORAL ARGUMENT ............................................ i

TABLE OF CONTENTS.................................................................................. ii

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION . vii
    I.      District Court Jurisdiction ................................................. vii
    II.    Appellate Jurisdiction...................................................... vii
    III.   Timeliness ...................................................................... viii
    IV.   Appeal From Final Judgment ........................................... viii

STATEMENT OF THE ISSUES......................................................................1

STATEMENT OF THE CASE ........................................................................2
    I.      Course of Proceedings and Disposition Below ....................2
    II.    Statement of Facts .............................................................6
        A.    Subotic.................................................................6
        B.    Relevant Jabil Policies .........................................6
        C.    Security Considerations ........................................8
        D.    Subotic's Chain of Command.................................9
        E.    Holton and Eells Issue Performance-Related Discipline to Subotic .................................................9
        F.    Subotic Complains to HR About Holton .................11
        G.    Holton Advises HR of a Cyberstalking Complaint Against Subotic .................................................12
        H.    HR Investigates Lane's Cyberstalking Complaint against Subotic .................................................13
        I.    HR Finds No Merit to Subotic's Discrimination Complaint and Closes Its Investigation ...........................................15
        J.    HR Concludes the Investigation Into the Cyberstalking Complaint Against Subotic, and Terminates Subotic for Violating Jabil's Security Policy and Code of Conduct ..........15
    III.   Statement of Standard of Scope of Review for Each Contention .......16

SUMMARY OF THE ARGUMENT ....................................................................18

ARGUMENT .........................................................................................................19
    I.      The District Court Did Not Abuse Its Discretion When It Deemed as Admitted Jabil's Material Facts That Subotic Failed to Properly Dispute, and When It Declined to Consider Subotic's Unsupported Statements of Additional Material Facts .............................................19
    II.    The District Court Properly Held Jabil to the Applicable Burden of Proof in Granting Summary Judgment in Jabil's Favor on Subotic's National Origin Discrimination Claims .............................................24
        A.     The District Court Properly Permitted Jabil to Address Mixed-Motive Theory in Its Reply Brief .............................................24
        B.     The District Court Properly Applied the Appropriate Burden of Proof to Subotic's Discrimination Claims ................................26
    III.   A *De Novo* Review of the Record Evidence Leads to the Conclusion That Judgment Against Subotic Upon All of His Claims Must be Affirmed .............................................................................................31
        A.     The Cat's Paw Theory of Liability Is Inapplicable Here..........31
        B.     The District Court Properly Ruled There Was Insufficient Circumstantial Evidence for a Reasonable Jury to Conclude Subotic's Serbian Ethnicity Was a Motivating Factor in His Discipline or Termination .......................................................32
        C.     The District Court Properly Determined There was Insufficient Evidence of Pretext for Subotic's Retaliation Claims to Survive Summary Judgment. ...............................................................33

CONCLUSION .....................................................................................................35

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ..........36

CERTIFICATE OF SERVICE ..............................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Royal Atl. Devs., Inc.*,
610 F.3d 1253 (11th Cir. 2010) ...................................................34, 35

*Burton v. Gwinnett Cnty. Sch. Dist.*,
No. 1:16-cv-03775-LMM-WEJ, 2017 WL 11496778 (N.D. Ga.
Oct. 31, 2017) ...........................................................................32

*Chapman v. AI Transp.*,
229 F.3d 1012 (11th Cir. 2000) (en banc) .........................................17

*E.E.O.C. v. Joe's Stone Crab, Inc.*,
220 F.3d 1263 (11th Cir. 2000) ........................................................30

*Flowers v. Troup County, Ga., School Dist.*,
803 F.3d 1327 (11th Cir. 2015) ........................................................28

*General Elec. Co. v. Joiner*,
522 U.S. 136 (1997)........................................................................17

*Gogel v. Kia Motors Mfg. of Georgia, Inc.*,
967 F.3d 1121 (11th Cir. 2020) ...........................................17, 34, 35

*McCann v. Tillman*,
526 F.3d 1370 (11th Cir. 2008) ........................................................30

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)............................... 18, 24, 25, 26, 27, 28, 29, 30

*Powell v. Am. Remediation & Envtl, Inc.*,
61 F. Supp. 3d 1244 (S.D. Ala. 2014), *aff'd*, 618 Fed. App'x 974
(11th Cir. 2015)..............................................................................27

*Quigg v. Thomas Cnty. Sch. Dist.*,
814 F.3d 1227 (11th Cir. 2016), *aff'd*, 728 F. App'x 996 (11th Cir.
2018) ..........................................................................................24

*Smith v. Mercer*,
 572 F. App'x 676 (11th Cir. 2014) ...............................................20, 22

*In re Tupperware Brands Corporation Securities Litigation*,
 No. 6:20-cv-357-Orl-31GJK, 2021 WL 247870 (M.D. Fla. Jan. 25,
 2021) ..........................................................................................................26

*United States v. Estelan*,
 156 F. App'x 185 (11th Cir. 2005) ....................................................17

*United States v. Gold*,
 743 F.2d 800 (11th Cir. 1984) .............................................20, 23, 31

*Vargas v. Michaels Stores, Inc.*,
 No. 8:16-cv-1949-VMC-JSS, 2017 WL 3174058 (M.D. Fla. Jul.
 26, 2017) ..............................................................................................25, 26

*Young v. City of Palm Bay, Fla.*,
 358 F.3d. 859 (11th Cir. 2004) ....................................................19, 23

**Statutes**

28 U.S.C. § 1291 ...................................................................................... vii

28 U.S.C. §1331 ...................................................................................... vii

28 U.S.C. § 1367 ...................................................................................... vii

42 U.S.C. § 1981 ................................................................................. vii, 2

Title VII of the Civil Rights Act of 1964 ........................................... vii, 2

Fla. Stat. § 760.01 *et seq*. ....................................................................... vii

Florida Civil Rights Act of 1992 ....................................................... vii, 2

Florida Whistleblower Act, Fla. Stat. § 448.101 *et seq*. ................... vii, 2

**Other Authorities**

Eleventh Circuit Rule 26.1-1 ................................................................C-1

Eleventh Circuit Rule 32-4 ......................................................................36

Fed. R. Civ. P. 56(a) ............................................................................17

Federal Rule of Appellate Procedure 26.1 ..........................................C-1

Federal Rule of Appellate Procedure 32(a)(5)(6) ................................36

Federal Rule of Appellate Procedure 32(a)(7)(B) ...............................36

Local Rule 56.1 ...............................................................................20, 21

# STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

## I.     District Court Jurisdiction

Subotic filed a complaint against Jabil in the United States District Court, Middle District of Florida, Tampa Division, alleging national origin discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the Florida Civil Rights Act of 1992, as amended, Fla. Stat. § 760.01 *et seq*. ("FCRA"), and the Florida Whistleblower Act, Fla. Stat. § 448.101 *et seq*. ("FWA"). (Doc. 1, pp. 1-20). The district court had federal question jurisdiction under 28 U.S.C. §1331, and supplemental jurisdiction over Subotic's state law claims (which arose out of the same nexus of operative facts as the federal claims) under 28 U.S.C. § 1367.

## II.     Appellate Jurisdiction

In an October 18, 2022 order, the Honorable Virginia M. Hernandez Covington, Judge, United States District Court, Middle District of Florida ("Judge Covington"), granted Jabil's motion for summary judgment in its entirety and dismissed all of Subotic's claims. (Doc. 39, pp. 1-42). The district court entered final judgment the same day. (Doc. 40, pp. 1-2). This Court has jurisdiction in this matter under 28 U.S.C. § 1291.

**III.    Timeliness**

The district court entered its order granting Jabil's motion for summary judgment and final judgment in Jabil's favor on October 18, 2022. (Doc. 39, pp. 1-42; Doc. 40, pp. 1-2). On November 16, 2022, Subotic timely filed a notice of appeal with the district court. (Doc. 44, pp. 1-2; Doc. 44-1, pp. 1-42; Doc. 44-2; pp. 1-2). Subotic then obtained three extensions of time to file his principal brief, culminating in a deadline of ***April 6, 2023.*** (Appellate Docket ("App. Doc.") 20). Subotic filed his appendix on the afternoon of April 6, 2023. (App. Doc. 26). However, Subotic did not file his principal brief until ***April 7, 2023 at 12:08 a.m.*** (App. Doc. 27).

**IV.    Appeal From Final Judgment**

This is an appeal of a final judgment entered by Judge Covington in the Middle District of Florida on October 18, 2022. (Doc. 40, pp. 1-2).

**STATEMENT OF THE ISSUES**

1.      Whether the district court (a) properly deemed as admitted Jabil's material facts that Subotic failed to dispute with supporting record evidence and/or deposition line designations; and (b) properly declined to consider Subotic's statements of additional material facts that were unsupported by proper citations to record evidence.

2.      Whether the district court properly granted summary judgment in favor of Jabil on Subotic's national origin discrimination claims.

3.      Whether the district court properly granted summary judgment in favor of Jabil on Subotic's retaliation claims.

**STATEMENT OF THE CASE**

Jabil hired Subotic as a Support Technician II ("Tech II") on April 17, 2017 at its Defense and Aerospace facility ("JDAS") in St. Petersburg, Florida. (Doc. 26, p. 2). Subotic worked in this role until Jabil terminated him on August 18, 2020. (Doc. 26, p. 10). Subotic alleges Jabil terminated him due to his Serbian national origin and ethnicity, and/or because he complained to Human Resources of disparate treatment by management due to his Serbian national origin. (Doc. 1, pp. 1-15). Jabil states its reasons for terminating Subotic were wholly legitimate, non-discriminatory, and non-retaliatory. Specifically, Jabil terminated Subotic because he violated the Company's Security Policy and Code of Conduct by making repeated, unauthorized attempts to gain access to the computer account of a female co-worker toward whom he had allegedly made inappropriate advances, and by misusing his administrator account to disable her computer. (Doc. 26, pp. 8-10).

## I.   Course of Proceedings and Disposition Below

On September 7, 2021, Subotic filed a seven-count complaint against Jabil in the United States District Court, Middle District of Florida, Tampa Division, alleging national origin discrimination under Title VII, Section 1981, and the FCRA, and retaliation under Title VII, Section 1981, the FCRA, and the FWA. (Doc. 1, pp. 1-20). Jabil filed its answer and affirmative defenses on November 1, 2021 (Doc. 11, pp. 1-21), and the parties engaged in discovery. On November 17, 2021, the

district court entered an order pertaining to motions for summary judgment, noting that "[e]ach fact [in the statement of material facts] must be supported by a pinpoint citation to the specific part of the record relied upon to support that fact," (Doc. 17, pp. 1-2), and noting even more specifically that "[f]or example, a reference to 'Deposition of Jones' is insufficient; the page and line number of the deposition transcript must be included." (Doc. 17, pp. 1-2). The order required that the opposing party's response "must set forth a pinpoint citation to the record where the fact is disputed," and underscored that "[i]n deciding a motion for summary judgment, the Court will deem admitted any fact in the statement of material facts that the opposing party does not specifically controvert, provided record evidence supports the moving party's statement." (Doc. 17, pp. 2-3).

At the conclusion of discovery, Jabil moved for summary judgment. (Doc. 26, pp. 1-25). Jabil argued, in relevant part, that (1) Subotic could not produce evidence of similarly-situated employees outside his protected class who were treated more favorably, (Doc. 26, pp. 11-12); (2) Subotic's repeated, unauthorized attempts to access a co-worker's computer account, for which he had no viable excuse, was a policy violation and legitimate, non-discriminatory, non-retaliatory, non-pretextual basis for his termination, (Doc. 26, pp. 12-15, 17-18); and (3) Subotic could not establish the requisite causal connection between protected activity and termination so as to establish a viable retaliation claim (Doc. 26, pp. 15-17).

In his response to Jabil's motion, Subotic argued, in relevant part, that (1) his national origin discrimination claims survive under the "motivating factor" analysis (Doc. 30, pp. 10-13); and (2) there was sufficient protected activity, a causal connection, and pretext for his retaliation claims to survive summary judgment. (Doc. 30, pp. 13-20). Jabil filed a reply to Subotic's response. (Doc. 31, pp. 1-7). Thereafter, Subotic filed an unrelated "Omnibus Motion in Limine" seeking to "exclude certain documents and testimony from being presented to the jury," with which the deposition transcript of Scott Marsala (which was not included as part of the summary judgment record) was included as an exhibit. (Doc. 32, pp. 1, 9-10; Doc. 32-2, pp. 1-94).

On October 18, 2022, the district court granted Jabil's motion for summary judgment in its entirety. (Doc. 39, pp. 1-42; Doc. 40, pp. 1-2). The district court noted as an initial matter that Subotic "failed to properly dispute certain of Jabil's statements of material fact because Subotic did not cite any record evidence in support of such dispute – a requirement the Court explained in its order regarding summary judgment briefing. See (Doc. 17 at 2) ('Each denial must set forth a pinpoint citation to the record where the fact is disputed …. In deciding a motion for summary judgment, the Court will deem admitted any fact in the statement of material facts that the opposing party does not specifically controvert, provided records evidence supports the moving party's statement.')" (Doc. 39, pp. 21-22).

The district court further noted "Subotic also fails to properly cite deposition testimony, as he does not cite line designations as required," ultimately concluding it would "consider any statement of material fact that Subotic has failed to properly dispute as admitted and [would] not credit Subotic's statements of additional material facts that are not supported by a proper citation to record evidence." (Doc. 39, p. 22). The district court finally noted it would disregard any of Subotic's references to evidence in the body of his response that were not included in his statement of material facts, as it did not consider such references to be record evidence. (Doc. 39, p. 22).

Addressing the merits of Subotic's claims, with regard to his retaliation claims, the district court found Subotic failed to demonstrate a genuine issue of material fact with regard to pretext, and failed to rebut Jabil's legitimate, non-retaliatory reason for his termination. (Doc. 39, pp. 24-25). More specifically, the district court found "Jabil had a good faith belief that Subotic had intentionally attempted to login to Lane's account without authorization," and "a good faith belief that Subotic's conduct was improper under the Code of Conduct and Security Policy." (Doc. 39, pp. 26-27).

As for Subotic's national origin discrimination claims, the district court, utilizing a mixed-motive or "motivating factor" analysis, found that Subotic failed to show a genuine issue of material fact regarding discrimination. (Doc. 39, p. 35).

The district court found "no evidence" that the primary person Subotic accused of discrimination "knew of [his] Serbian national origin or ethnicity at the time she began issuing him discipline," and noted other non-Serbian technicians who were disciplined for similar performance issues. (Doc. 39, pp. 35-36). The district court also found that none of the termination decision-makers made any comments regarding Subotic's Serbian national origin or ethnicity once it came to light, and the court declined to lend any credence to a single, isolated statement by a non-supervisory co-worker about his dislike for "ethnic" food. (Doc. 39, pp. 36-37).

This appeal followed.

## II. Statement of Facts

### A. Subotic

Subotic was born in Bosnia and resided there until age 19, at which time he moved to the United States. (Doc. 26-2, p. 2). Subotic is "of Serbian ethnicity." (Doc. 26-2, p. 13). On April 17, 2017, Jabil hired Subotic as a full-time Support Technician II ("Tech II") at Jabil's Defense and Aerospace facility ("JDAS") in St. Petersburg, Florida. (Doc. 26-2, pp. 5, 9, 124).

### B. Relevant Jabil Policies

Jabil provided Subotic copies of his job description and the company Handbook, which Subotic reviewed and executed. (Doc. 26-2, pp. 5-6, 30-33, 124). Subotic understood he was required to adhere to all Jabil policies and procedures,

and was to maintain "discretion and confidentiality in all areas pertaining to IT systems" and "comply and follow all procedures within the company security policy." (Doc. 26-2, pp. 5-6, 30-31). Jabil's Global Information Security Policy ("Security Policy") states, in relevant part:

**2. Scope**

\*\*\*

2.4.    Jabil considers any violation of this policy to be a serious offense and shall constitute an information security violation. Individuals violating the policies shall be subject to disciplinary action, up to and including termination as well as any civil, criminal, or other remedies available at law.

\*\*\*

**6. Policy Statement(s)**

\*\*\*

6.9.4. All accounts providing access to Jabil information resources must be unique to each individual and must be used only by the assigned individual or approved by Global Information Security.

6.9.5. Individuals are accountable for actions associated with their assigned account.

(Doc. 26-3, pp. 4, 25, 29).

Jabil's Standards of Performance and Conduct ("Code of Conduct") states, in relevant part, that:

If an employee violates any company policy or work rule, a supervisor or manager may discuss it with the employee, or the employee may

receive a written counseling, documenting the employee's unacceptable performance or behavior. Depending on the severity of the policy violation, an employee may be terminated immediately, or may be placed on a disciplinary suspension.

(Doc. 26-3, pp. 4, 32). The Code of Conduct identifies multiple "Examples of Inappropriate Conduct," including the following:

- Theft, embezzlement or misuse of company, employee, customer, vendor, supplier, or visitor property or money.

- Harassing or discriminating behavior or any other violation of Jabil's Harassment Policy.

- Deliberately damaging or attempting to damage company, employee, customer, vendor, supplier, or visitor property or money.

- Tampering with security equipment.

(Doc. 26-3, pp. 4, 32).

### C. Security Considerations

Jabil assigns each employee a computer account ("Jabil account") which allows each employee access to his or her company email and other employment-related applications. (Doc. 26-4, pp. 1-2). Each Jabil employee has a nine-digit employee number which operates as the username for each employee's Jabil account. (Doc. 26-4, pp. 1-2). As a Tech II, Subotic also had a Jabil administrator account (account no. JABILDAS\Q1__100042918). (Doc. 26-3, p. 4). Subotic understood he was permitted to access other employees' Jabil accounts only for

purposes of providing IT support, and only when requested by an employee or his or her supervisor. (Doc. 26-2, p. 6).

### D.     Subotic's Chain of Command

Subotic initially reported to Site IT Manager Romeo Cooper. (Doc. 26-2, p. 5). In November 2019, Andrew Eells was named IT Supervisor, and Subotic became a direct report to Eells, who in turn reported to Cooper. (Doc. 26-2, p. 5; Doc. 26-5, p. 1). On May 18, 2020, Jabil demoted Cooper from the Site IT Manager position due to his failure to hold the IT team accountable. (Doc. 26-3, p. 1). Natasha Holton laterally moved from a Quality Manager position to the Site IT Manager position, and she was tasked with improving the performance of the onsite IT team, including Subotic. (Doc. 26-3, p. 1; Doc. 26-4, p. 1). Eells remained Subotic's direct supervisor and began reporting to Holton. (Doc. 26-5, p. 1).

### E.     Holton and Eells Issue Performance-Related Discipline to Subotic

Jabil employees request onsite IT assistance by (1) submitting an IT ticket, (2) coming to the IT desk to ask a Tech for help, and/or (3) calling the IT desk/Tech for assistance. (Doc. 26-2, p. 6). Outside of normal operating hours and on weekends, Jabil requires one Tech to be on call for IT issues. (Doc. 26-2, p. 12). On-call duty rotates amongst Techs I and II, and it is paid. (Doc. 26-2, p. 12; Doc. 26-4, p. 2; Doc. 26-5, p. 2). Jabil expects on-call Techs to (1) answer the on-call telephone when it rings, (2) immediately begin working on resolving the issue and, (3) depending on

the nature and severity of issue, travel to JDAS to resolve the issue if it cannot be resolved remotely. (Doc. 26-4, p. 2; Doc. 26-5, p. 2).

On Saturday, July 11, 2020, Subotic failed to answer two phone calls from Holton while on-call, neglected to respond to Holton until three hours after her first call, and then attempted to resolve the IT issue (which involved two employees being locked out of their computers) by sending emails to the employees which they could not access because they were locked out of their computers. (Doc. 26-2, pp. 10-11). On July 14, 2020, Holton and Eells issued Subotic a verbal warning for failing to properly perform his on-call duties on the weekend of July 11-12, 2020, which ultimately resulted in two people in the shipping department being sent home because they could not perform work due to being locked out of their computers. (Doc. 26-4, pp. 2-3; Doc. 26-5, pp. 2-3, 6).

Also, Jabil had an on-site IT phone, for which there was an agreed schedule amongst the Techs regarding monitoring the on-site phone. (Doc. 26-2, pp. 11-12; Doc. 26-4, pp. 2-3; Doc. 26-5, pp. 1, 3). On July 21, 2020, Holton and Eells issued Subotic a written warning for his failure to carry the on-site phone when he was the morning shift Tech. (Doc. 26-4, pp. 3-4; Doc. 26-5, pp. 3, 7). Subotic does not recall whether he carried the on-site phone on July 20, 2020, and did not object to the discipline. (Doc. 26-2, p. 11; Doc. 26-5, p. 7).

### F.     Subotic Complains to HR About Holton

On July 31, 2020, Subotic emailed the following to former HR Manager II

Deanna Doheny, with copies to Holton and Eells:

> I just want to report to you that I have been continuously discriminated
> in the past 2 months on the basis of the national origin as being of a
> Serbian ethnicity. What I have experienced lately leads me to believe
> that I am being setup to get fired by my manager. I also think that I have
> been treated differently than my other co-workers. In addition, it
> appears that I have been treated unfairly in this same time. None of
> these things were happening more than 2 months, but all those things
> have been going on only in the past 2 months.

(Doc. 26-2, pp. 14, 126).

Doheny met with Subotic the same day and immediately began an

investigation. (Doc. 26-3, p. 1). Subotic specifically complained Holton was

discriminating against him by writing him up when she was not disciplining other

Techs for similar infractions. (Doc. 26-3, pp. 1, 20). Subotic advised that neither

Holton nor Eells had ever made any comments related to or regarding his Serbian

ethnicity or national origin, and rather reported a single comment by co-worker/Tech

I Scott Marsala, who allegedly stated he did not want to try the food Subotic brought

for lunch because he did not like "ethnic" food. (Doc. 26-3, p. 1). Subotic was in fact

unaware as to whether Holton had disciplined other Techs for similar infractions,

but he nevertheless considered her write-ups discriminatory because he had not been

disciplined by Cooper. (Doc. 26-2, pp. 14-16). Subotic was also unsure as to whether

Holton knew of his Serbian ethnicity and/or national origin, and indeed, Holton was unaware of Subotic's national origin until his July 31, 2020 email. (Doc. 26-2, pp. 7-8, 11, 14; Doc. 26-4, p. 4).

Doheny interviewed Holton on August 3, 2020, at which time Holton denied discriminating against Subotic. (Doc. 26-3, p. 2; Doc. 26-4, p. 4). Holton explained she and Eells had disciplined other, non-Serbian employees for similar performance issues, including Tech II M.F.[1] (who was issued a verbal warning on June 1, 2020, a written warning on June 29, 2020, a final written warning on July 17, 2020, and then terminated on July 28, 2020, for his repeated job performance issues/failures), and Marsala (who was counseled regarding complaints about his teamwork from other Techs, including Subotic). (Doc. 26-3, p. 2; Doc. 26-4, pp. 5, 21-23).

### G.      *Holton Advises HR of a Cyberstalking Complaint Against Subotic*

During their August 3, 2020 meeting, Holton further advised Doheny that in mid-July 2020, Master Planner Tatianna Lane reported to her that she was experiencing ongoing computer lockout issues due to "too many failed login attempts," when she personally had no failed login attempts. (Doc. 26-3, pp. 2-3; Doc. 26-4, p. 5). Lane reported to Holton that she asked Marsala for assistance, and Marsala informed her that Jabil's system showed the most recent lockout had

---

[1] In the interest of privacy, Jabil identifies this employee herein by initials only.

occurred due to unsuccessful login attempts from Subotic's computer. (Doc. 26-3, pp. 2-3; Doc. 26-4, pp. 4-5). Lane informed Holton she had never asked Subotic for IT assistance, and she had never attempted to login to her account from his computer. (Doc. 26-3, pp. 2-3; Doc. 26-4, pp. 4-5). Lane informed Holton she was concerned Subotic was trying to access her account because of prior personal "incidents" between them. (Doc. 26-3, pp. 2-3; Doc. 26-4, pp. 4-5). Holton advised Doheny at their August 3, 2020 meeting that in mid-July 2020, she began working with IT Architect Rob Ingenthron to pull the system logs for Lane's account in order to further investigate Lane's concerns. (Doc. 26-3, pp. 2-3; Doc. 26-4, pp. 4-5).

### H.    HR Investigates Lane's Cyberstalking Complaint against Subotic

Doheny felt Lane's allegations, if true, would show a serious breach of Jabil's policies by Subotic, and therefore asked Holton to provide the information from her investigation thus far, which Holton did. (Doc. 26-3, pp. 3, 11-19). Then, on August 5, 2020, Doheny interviewed Lane, and Lane confirmed the following:

- She had experienced ongoing lockout issues from her Jabil account, receiving error messages that she had too many failed login attempts, even though she had not personally had any failed attempts to login prior to the lockout (Doc. 26-3, pp. 3-4, 23);

- In early July 2020, she asked Marsala why she was locked out of her account due to unsuccessful login attempts after only briefly stepping away from her desk, and that Marsala advised that she was locked due to unsuccessful login attempts from Subotic's Jabil desktop (Doc. 26-3, pp. 3-4, 23); and

- Subotic had behaved inappropriately toward her on several occasions, including touching her vagina without her consent after the Jabil holiday party in December 2018, telling her he had "feelings" for her in or around January/February 2019, and making unwelcome advances toward her, including showing up at her home uninvited on two occasions (Doc. 26-3, pp. 3-4, 23).

Doheny then, with the assistance of Holton and Ingenthron, reviewed the system logs, which demonstrated:

- That Subotic's Jabil-assigned computer attempted to login to Lane's Jabil account using her Jabil employee number username (100063684) on March 30, 2020, April 17, 2020, May 26, 2020, and on July 2, 2020 (Doc. 26-3, pp. 4, 11-13, 23; Doc. 26-4, pp. 4-5);

- That on two other occasions, March 30, 2020 and April 17, 2020, Subotic's administrator account (JABILDAS\Q1_100042918) had disabled Lane's computer (Doc. 26-3, pp. 4, 11-13, 23; Doc. 26-4, pp. 4-5); and

- That Lane had not submitted any IT tickets for service on these dates (Doc. 26-3, pp. 4, 11-13, 23; Doc. 26-4, pp. 4-5).

The only other attempts to access Lane's account had come from Lane's own computer, and computers that were assigned to employees Duy Huynh and Nagellie Sanincencio. (Doc. 26-3, pp. 3-4). Doheny determined that Lane herself likely attempted to access her account from Huynh's and Sanincencio's computers, based on the fact that Huynh and Sanincencio had multiple computers assigned to them in JDAS conference rooms and on the JDAS floor that were used by numerous employees, including Lane. (Doc. 26-3, pp. 3-4). Doheny also reviewed video footage of the IT area from July 2, 2020, and found that only Subotic appeared to be

in his cubicle at his Jabil-assigned computer at the time of the attempted access of

Lane's account. (Doc. 26-3, p. 4).

**I.      HR Finds No Merit to Subotic's Discrimination Complaint and Closes Its Investigation**

On or about August 12, 2020, Doheny provided Subotic with her investigative

findings regarding his complaint of discrimination against Holton, advising there

was no evidence to support that Holton was treating him differently due to his

Serbian national origin. (Doc. 26-3, pp. 3, 20-21). Subotic advised he did not have

any other concerns, so Doheny closed the investigation. (Doc. 26-3, pp. 3, 20-21).

**J.      HR Concludes the Investigation Into the Cyberstalking Complaint Against Subotic, and Terminates Subotic for Violating Jabil's Security Policy and Code of Conduct**

On August 14, 2020, Doheny interviewed Subotic regarding Lane's

allegations. (Doc. 26-3, p. 4). Subotic claimed he had locked himself out of his Jabil

account, so he created a fake username and used a "random" employee identification

number to try to gain access; however, Subotic was unable to explain why he had

repeatedly used the same "random" employee identification number belonging to

Lane, why the "random" attempts after he had a "lockout" occurred on multiple

different dates, or why he had administratively disabled Lane's computer on two

occasions.  (Doc. 26-3, pp. 4, 23).

Doheny determined Subotic had failed to provide any legitimate reason for attempting to access Lane's Jabil account when she had not submitted an IT ticket or asked for his assistance, and that he had committed a serious violation of Jabil's Security Policy and Code of Conduct by trying to access Lane's Jabil account and disabling her computer without authorization. (Doc. 26-3, pp. 4-5, 23). Doheny recommended Subotic's termination, which Holton and former Director of Operations Ron Anderson approved. (Doc. 26-3, pp. 4-5, 23; Doc. 26-4, p. 6; Doc. 26-6, p. 1).

On August 18, 2020, Anderson and Doheny met with Subotic via Microsoft Teams and advised him that his employment was being terminated due to his violation of Jabil policies. (Doc. 26-2, p. 16; Doc. 26-3, p. 5). On the same day, Holton and Eells issued Tech I Eric Flynn a verbal warning for his failure to carry the on-call phone when he was the Tech designated as on-call for the week of August 10-17, 2020. (Doc. 26-4, pp. 5-6, 33; Doc. 26-5, p. 4).

III.    Statement of Standard of Scope of Review for Each Contention

To the extent Subotic challenges whether the district court (a) properly deemed as admitted Jabil's material facts that Subotic failed to dispute with supporting record evidence and/or deposition line designations; and/or (b) properly declined to consider Subotic's statements of additional material facts that were unsupported by proper citations to record evidence, these evidentiary decisions are

16

reviewed under an abuse-of-discretion standard. *See, e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). "An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *United States v. Estelan*, 156 F. App'x 185, 196 (11th Cir. 2005) (citing *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005)).

As for whether the district court properly granted summary judgment in favor of Jabil on Subotic's national origin discrimination and retaliation claims, the district court's order in this regard is subject to *de novo* review by this Court, "view[ing] the evidence in the light most favorable to the non-moving party." *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (internal citation omitted). "The summary judgment rule applies in job discrimination cases just as in other cases," *Chapman v. AI Transp*., 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc) (internal citation omitted), meaning summary judgment is proper if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Gogel*, 967 F.3d at 1134; Fed. R. Civ. P. 56(a). Further, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Gogel*, 967 F.3d at 1134 (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## SUMMARY OF THE ARGUMENT

The district court did not abuse its discretion when it deemed as admitted Jabil's material facts that he failed to properly dispute, and when it declined to consider his unsupported statements of additional material facts. Subotic simply failed to comply with the district court's order regarding evidentiary citations, and offers no explanation as to why.

Secondly, the district court properly held Jabil to the applicable burden of proof on Subotic's discrimination claims. The court properly permitted Jabil to address mixed-motive theory in its reply brief, even though it did not address the theory in its summary judgment motion, where Subotic repeatedly testified the **only** reason he was disciplined/terminated was because of his Serbian national origin. The court also properly determined Subotic waived any argument that his claims should survive summary judgment under the *McDonnell Douglas* framework when he failed to address this framework in his response to Jabil's summary judgment motion; regardless, Subotic's claims would fail under this framework.

Finally, the district court properly ruled there was insufficient circumstantial evidence to support a mixed-motive discrimination claim, and properly determined there was insufficient evidence of pretext to allow Subotic's retaliation claims to survive summary judgment, where Jabil had an honest, good faith belief that Subotic

violated its Code of Conduct and Security Policy by accessing Lane's account without authorization or a valid business purpose.

## ARGUMENT

**I.** **The District Court Did Not Abuse Its Discretion When It Deemed as Admitted Jabil's Material Facts That Subotic Failed to Properly Dispute, and When It Declined to Consider Subotic's Unsupported Statements of Additional Material Facts**

Subotic argues that the district court "disregarded its obligation to consider the record and whether statements of fact were supported by the record" (App. Doc. 27, p. 21), and committed an abuse of discretion, when it deemed as admitted Jabil's material facts that he failed to properly dispute, and when it declined to consider his unsupported statements of additional material facts. As this Court held in *Young v. City of Palm Bay, Fla.*, 358 F.3d. 859, 863 (11th Cir. 2004):

> When we review a district court's decision under the abuse of discretion standard, our review is limited; and we give the court "considerably more leeway than if we were reviewing the decision de novo." *Cason v. Seckinger*, 231 F.3d 777, 786 (11th Cir. 2000). The district court has a range of options; and so long as the district court does not commit a clear error in judgment, we will affirm the district court's decision. *In re Rasbury*, 24 F.3d 159, 168 (11th Cir.1994); *see Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665-66, 98 S.Ct. 2552, 2559, 57 L.Ed.2d 504 (1978) ("Where a matter is committed to the discretion of a district court, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'")

Indeed, "the decision to admit or to exclude evidence is a matter for the sound discretion of the trial judge." *United States v. Gold*, 743 F.2d 800, 815 (11th Cir. 1984) (internal citations omitted).

In *Smith v. Mercer*, 572 F. App'x 676, 678 (11th Cir. 2014), this Court held that despite the appellant's *pro se* status, "the district court did not abuse its discretion in applying N.D. Ga. L.R. 56.1 to deem Defendants' facts admitted." This Court explained:

> The Federal Rules of Civil Procedure state that a party asserting that a fact is genuinely disputed must cite to specific materials in the record, and a failure to do so allows the district court to consider the fact as undisputed for purposes of the motion for summary judgment. Fed.R.Civ.P. 56(c)(1)(A), (e)(2). Similarly, Northern District of Georgia Local Rule 56.1(B) states, in relevant part, that a district court will deem the movant's statement of material facts as admitted unless the non-movant's response "contain[s] individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts," and "(i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number)." N.D. Ga. L.R. 56.1(B)(2)a.(1), (2).

*Smith*, 572 F. App'x at 678. This Court held that "[t]he district court previously warned Smith that he must comply with the local rules in drafting his response to Defendants' statement of material facts. However, Smith's response failed to comply with L.R. 56.1 by not including citations to evidence." *Id*. This Court held that "[t]he district court thus did not abuse its discretion in deeming Defendants' facts admitted, and disregarding or ignoring evidence relied on by Smith -- but not cited in his

response to Defendants' statement of undisputed facts -- that yields facts contrary to those listed in Defendants' statement." *Id*.

Here, the district court's November 17, 2021 Order on motions for summary judgment advised "of the Court's requirements for motions for summary judgment," which included that "[e]ach denial [of the moving party's material facts] must set forth a pinpoint citation to the record where the fact is disputed." (Doc. 17, p. 2). The district court explained that "a reference to 'Deposition of Jones' is insufficient; the page and line number of the deposition transcript must be included." (Doc. 17, pp. 1-2). Subotic nevertheless failed to include pinpoint citations, as defined in the district court's November 17, 2021 order, in his response to statement of material facts, or his additional undisputed facts. (Doc. 30, pp. 2-6). As such, in the district court's October 18, 2022 Order granting Jabil's motion for summary judgment, the court noted that Subotic "failed to properly dispute certain of Jabil's statements of material fact because Subotic did not cite any record evidence in support of such dispute – a requirement the Court explained in its order regarding summary judgment briefing. See (Doc. 17 at 2) ('Each denial must set forth a pinpoint citation to the record where the fact is disputed …. In deciding a motion for summary judgment, the Court will deem admitted any fact in the statement of material facts that the opposing party does not specifically controvert, provided record evidence supports the moving party's statement.')" (Doc. 39, pp. 21-22).

The district court further noted in its October 18, 2022 order that "Subotic also fails to properly cite deposition testimony, as he does not cite line designations as required," and ultimately concluded it would "consider any statement of material fact that Subotic has failed to properly dispute as admitted and [would] not credit Subotic's statements of additional material facts that are not supported by a proper citation to record evidence." (Doc. 39, p. 22). The district court finally noted it would disregard any of Subotic's references to evidence in the body of his response that were not included in his statement of material facts, as it did not consider such references to be record evidence. (Doc. 39, p. 22).

Subotic offers no explanation as to why he did not fully comply with the district court's November 17, 2021 Order. Rather, he attempts to characterize the district court's summary judgment ruling as "a refusal to consider all of the record evidence before it" because he failed to comply with the court's "procedural preferences," which is misleading at best. Subotic, quite simply, failed to comply with the district court's Order regarding evidentiary citations. He offers no case law to support his apparent proposition that a district court judge's order somehow carries less weight than the court's local rules. (App. Doc. 27, p. 22, n. 4). This Court upheld a district court's decision to deem defendants' facts admitted, and to disregard evidence relied upon by a *pro se* plaintiff, where that plaintiff did not include proper citations to evidence. *Smith*, 572 F. App'x at 678. And here, Subotic

is represented by counsel, who should know better. *See Young*, 358 F.3d at 863 ("[p]laintiff voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.") (internal citation omitted).

Finally, Subotic weakly argues that the district court "disparately enforced [its procedural] preference in favor of Jabil," in that it "was willing to accept Jabil's citations to lengthy, single-spaced paragraphs in the affidavits it tendered in support of [its motion for summary judgment] … even though they were lengthier than deposition pages would have been, were the transcript not double-spaced." (App. Doc. 27, p. 23). Jabil complied with the federal and local rules, and the district court's November 17, 2021 Order, in its evidentiary citations. Subotic did not. The decision to deem as admitted Jabil's material facts that Subotic failed to properly dispute, and to decline to consider Subotic's unsupported statements of additional material facts, was "a matter for the sound discretion of the trial judge." *Gold*, 743 F.2d at 815.[2]

---

[2] It must be noted that Subotic's disregard of procedural rules and orders extends to his filing of his opening brief – which, while due on April 6, 2023, was filed at 12:08 a.m. on April 7, 2023.

**II.  The District Court Properly Held Jabil to the Applicable Burden of Proof in Granting Summary Judgment in Jabil's Favor on Subotic's National Origin Discrimination Claims**

Subotic argues that the district court improperly allowed Jabil to address the mixed-motive theory of discrimination in its summary judgment reply brief and failed to properly apply the *McDonnell Douglas* burden-shifting analysis in granting summary judgment in Jabil's favor on Subotic's discrimination claims. (App. Doc. 27, pp. 23-25). Subotic's arguments are wholly unsupported and of no merit.

**A.  The District Court Properly Permitted Jabil to Address Mixed-Motive Theory in Its Reply Brief**

In *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016), *aff'd*, 728 F. App'x 996 (11th Cir. 2018), this Court explained that discrimination claims can be categorized "as either single-motive or mixed-motive claims." More specifically, "single-motive claims – which are also known as 'pretext' claims – require a showing that bias was the true reason for the adverse action." *Id*. On the other hand, "[a]n employee can succeed on a mixed-motive claim by showing that illegal bias … 'was a motivating factor for' an adverse employment action, 'even though other factors also motivated' the action." *Id*. (internal citations omitted). "Mixed-motive and single-motive discrimination are different theories of discrimination, as opposed to distinct causes of action. Specifically, they serve as alternative causation standards for proving discrimination." *Id*. at 1235, n. 4.

Subotic argues that in its motion for summary judgment, "Jabil only argued that Subotic could not succeed under the *McDonnell Douglas* burden shifting framework," and that "[d]espite this, the district court determined that '[u]nder the particular circumstances of this case, the Court finds that Jabil has not waived the argument that Subotic failed to establish a dispute of material fact under the mixed-motive theory of discrimination." (App. Doc. 27, p. 25). Subotic somehow believes this was improper. However, Jabil explained in its reply brief -- and the district court agreed in its October 18, 2022 Order granting summary judgment in favor of Jabil -- that Subotic "repeatedly testified the **only** reason he was disciplined/terminated was because of his Serbian national origin." (Doc. 26-2, pp. 21, 23-24; Doc. 31, p. 2; Doc. 39, p. 33). The district court went on to explain that "[i]mportantly, once Subotic argued the motivating factor theory in his response to the Motion, Jabil addressed the motivating factor analysis on the merits in its reply." (Doc. 39, p. 33). The district court relied upon *Vargas v. Michaels Stores, Inc.*, No. 8:16-cv-1949-VMC-JSS, 2017 WL 3174058, at *2 (M.D. Fla. Jul. 26, 2017) in determining Jabil had not waived the argument that Subotic failed to establish a dispute of material fact under the mixed-motive theory.

In *Vargas*, the court explained that district courts may properly consider new arguments raised in reply briefs "if they address unexpected issued raised for the first time by the opposing party's response." *Vargas*, 2017 WL 3174058 at *2. *See*

*also In re Tupperware Brands Corporation Securities Litigation*, No. 6:20-cv-357-Orl-31GJK, 2021 WL 247870, *4 (M.D. Fla. Jan. 25, 2021) (same). Subotic offers no supporting case law for his argument that the district court's decision, or reliance on *Vargas*, was improper. Rather, Subotic seems to ask this Court to find the district court's reasoning to be improper simply because he says it is. The district court offered a clear and logical basis for permitting Jabil to address mixed-motive theory in its reply brief. Subotic fails to offer a cogent argument as to why the district court's decision was improper.

## B. The District Court Properly Applied the Appropriate Burden of Proof to Subotic's Discrimination Claims

In arguing that the district court failed to properly apply the *McDonnell Douglas* burden-shifting analysis to his discrimination claims, Subotic (1) fails to rebut the district court's determination that Subotic waived any argument his claims should survive summary judgment under the *McDonnell Douglas* framework in the first place, (2) misconstrues the *McDonnell Douglas* analysis, and (3) ignores the evidence Jabil relied upon and produced with regard to its legitimate, non-discriminatory reasons for both Subotic's write-ups and termination. Subotic argues:

> Jabil did not discharge its initial burden in the Motion and, as such, summary judgment was due to be denied irrespectively of whether Subotic even filed a response.

> ***

[T]he district court stated that "[b]ecause [Subotic's] response only discusses the mixed-motive theory of discrimination, Subotic has waived any argument that his claims should survive summary judgment under the *McDonnell Douglas* framework." This is an incorrect application of the summary judgment standard and is a *de facto* assumption that Jabil had met its burden as to that aspect of the case. As the moving party, Jabil bore the initial burden to either prove that there was no evidence to support a claim under the *McDonnell Douglas* framework or to affirmatively demonstrate that Subotic could not meet his burden of proof. If Jabil did not meet its initial burden, then Subotic did not have any duty to even respond to the Motion to survive summary judgment. [Citations omitted].

The Court did not address the sufficiency of Jabil's evidence with respect to the *prima facie* showing under *McDonnell Douglas* as to the disciplinary write-ups or the termination, or whether Jabil met its burden of producing of a legitimate, nondiscriminatory reason in the context of the disciplinary discipline. Without identifying how Jabil satisfied its burden on summary judgment as to *McDonnell Douglas*, the district court could not grant the Motion.

(App. Doc. 27, pp. 23-25).

As an initial matter, Subotic fails to rebut the district court's determination that he waived any argument his claims should survive summary judgment under the *McDonnell Douglas* framework in the first place, by failing to address the aforementioned framework in his response to Jabil's motion for summary judgment. (Doc. 39, pp. 32-33). Subotic merely acknowledges the district court's holding in this regard, and states, without any supporting case law, that "[t]his is an incorrect application of the summary judgment standard." (App. Doc. 27, p. 24). In fact, it is not. *See Powell v. Am. Remediation & Envtl, Inc.*, 61 F. Supp. 3d 1244, 1253, n.9

(S.D. Ala. 2014) ("[W]here the non-moving party fails to address a particular claim asserted in the summary judgment motion but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional and therefore consider the claim abandoned."), *aff'd*, 618 Fed. App'x 974 (11th Cir. 2015).

Assuming *arguendo* that Subotic did not waive the argument that his claims should survive summary judgment under the *McDonnell Douglas* framework, he erroneously seems to suggest, at least with regard to his termination, that if Jabil does not refute one or more of the *prima facie* elements of his claim, the analysis stops there, and Jabil is not permitted to introduce a legitimate, non-discriminatory reason for the termination. This ignores decades of precedent holding that when a plaintiff makes out a prima facie case of discrimination, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for the adverse action, following which the burden shifts back to the plaintiff to show the employer's proffered reason is pretext for discrimination. *See, e.g., Flowers v. Troup County, Ga., School Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). "At all times, the plaintiff retains 'the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination." *Flowers*, 803 F.3d at 1336 (internal citation omitted).

Subotic then argues "Jabil does not present any evidence or argument as to the existence or non-existence of a similarly-situated comparator in the context of Subotic's termination. … Therefore, taking the evidence in the light most favorable to Subotic, it must be assumed that Jabil is not disputing Subotic's ability to carry that burden, which means that the burden would shift to Jabil to produce its legitimate, nondiscriminatory reason(s) for terminating Subotic." (App. Doc. 27, p. 26). Jabil, however, did exactly that, explaining:

> (1) Doheny's investigation into Lane's complaint against Plaintiff substantiated Lane's allegations that Plaintiff tried to access her Jabil account without authorization; (2) Doheny determined that Plaintiff's attempts to access Lane's Jabil account and his use of his administrator account to disable her Jabil computer were in violation of Jabil's Security Policy and Code of Conduct; and (3) the Security Policy explicitly states that any violation of the policy is "a serious offense" and that employees who violate the Security Policy will be "subject to disciplinary action, **up to and including termination** …" Based on Doheny's findings and recommendation, Jabil terminated Plaintiff's employment for his violation of Jabil's Security Policy and Code of Conduct.

(Doc. 26, pp. 12-13; Doc. 26-3, pp. 4-5, 23, 29).

Similarly, Subotic takes far too narrow a view of what may be relevant evidence for purposes of the similarly-situated comparator analysis. With regard to his write-ups, Subotic argues, citing *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000), that "the question in the prima facie analysis under *McDonnell Douglas* is not whether the employer can prove that other individuals

were also disciplined, it is whether the employee can show that a similarly-situated individual outside of his protected class was treated more favorably." (App. Doc. 27, p. 27). *Joe's Stone Crab, Inc.* does not stand for the proposition that evidence of similarly-situated comparators outside the plaintiff's protected class receiving the same discipline as the plaintiff is irrelevant – rather, the passage Subotic cites simply recounts the *prima facie* elements under the *McDonnell Douglas* analysis. To the contrary, this Court has held that "in order to determine whether other employees were similarly situated to [the plaintiff], we evaluated 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008) (internal citation omitted). Therefore, Jabil's presentation of evidence that non-Serbian Techs M.F. and Flynn were disciplined for performance failures, including failing to carry the on-call phone, is, in fact, relevant to the *prima facie* analysis. (Doc. 26-3, p. 2; Doc. 26-4, pp. 5-6, 21-23, 33; Doc. 26-5, p. 4).

Finally, addressing Subotic's argument that "Jabil knew that there were other individuals who were not carrying the on-site phone but who were not disciplined," Jabil was not required to accept Subotic's report, upon being disciplined, that he "suspected" Marsala and another individual also had not carried the on-site phone. (App. Doc. 27, p. 28). Moreover, contrary to Subotic's assertion that "Jabil did not present any legitimate, nondiscriminatory reason [in support of] Subotic's

discipline," Jabil presented undisputed evidence that Holton was wholly unaware of Subotic's Serbian ethnicity at the time she issued the discipline, and importantly, Subotic does not deny that he failed to perform his on-call duties or carry the on-site phone, which was the very basis for his discipline. (Doc. 26-2, pp. 7-8, 10-12, 14; Doc. 26-4, pp. 2-4; Doc. 26-5, pp. 1-3, 6-7).

III.     **A *De Novo* Review of the Record Evidence Leads to the Conclusion That Judgment Against Subotic Upon All of His Claims Must be Affirmed**

As a threshold matter, much of the evidence upon which Subotic relies in arguing that a *de novo* review shows he should have survived summary judgment (i.e., deposition testimony of Marsala, Eells, Holton, and Doheny) was properly excluded by the district court as "a matter for the sound discretion of the trial judge," *Gold*, 743 F.2d at 815, and therefore should not be considered upon appeal. Even so, consideration of the evidence leads to the same conclusion – that summary judgment was properly granted in favor of Jabil.

A.     ***The Cat's Paw Theory of Liability Is Inapplicable Here***

Subotic weakly argues that the cat's paw theory of liability is applicable with regard to the discipline rendered by Holton based on a single, isolated, largely innocuous comment by Marsala that he did not like the "ethnic" food Subotic brought for lunch, and on the fact that Eells generally "knew of" Subotic's Serbian ethnicity. (App. Doc. 27, p. 31). This single comment by a co-worker (and Eells'

general knowledge of Subotic's Serbian ethnicity) is far too tenuous to trigger the application of the cat's paw theory. *See Burton v. Gwinnett Cnty. Sch. Dist.*, No. 1:16-cv-03775-LMM-WEJ, 2017 WL 11496778, *11 (N.D. Ga. Oct. 31, 2017) ("Dr. Camp's comments are so far removed from Superintendent Wilbanks's decision they border on being immaterial. Thus, plaintiff rests her mixed-motive theory almost entirely on one vague comment … While plaintiff's burden in providing evidence sufficient to survive summary judgment on a mixed-motive theory is light, she has failed to carry that burden here."), *report and recommendation adopted*, No. 1:16-cv-03775-LMM-WEJ, 2018 WL 10398907 (N.D. Ga. Feb. 7, 2018), *aff'd*, 756 F. App'x 926 (11th Cir. 2018).

> **B.** **_The District Court Properly Ruled There Was Insufficient Circumstantial Evidence for a Reasonable Jury to Conclude Subotic's Serbian Ethnicity Was a Motivating Factor in His Discipline or Termination_**

Subotic asserts that the decision-makers' eventual knowledge of his Serbian ethnicity, "the lack of a similarly-situated comparator," and evidence of pretext combine to create a disputed issue of fact as to whether his national origin was a motivating factor in his termination. (App. Doc. 27, p. 32). Subotic then inexplicably argues, again, that "Jabil does not clearly state what its purported legitimate reason for terminating Subotic was." (App. Doc. 27, p. 33). Jabil, of course, explained:

> (1) Doheny's investigation into Lane's complaint against Plaintiff substantiated Lane's allegations that Plaintiff tried to access her Jabil

> account without authorization; (2) Doheny determined that Plaintiff's attempts to access Lane's Jabil account and his use of his administrator account to disable her Jabil computer were in violation of Jabil's Security Policy and Code of Conduct; and (3) the Security Policy explicitly states that any violation of the policy is "a serious offense" and that employees who violate the Security Policy will be "subject to disciplinary action, **up to and including termination** …" Based on Doheny's findings and recommendation, Jabil terminated Plaintiff's employment for his violation of Jabil's Security Policy and Code of Conduct.

(Doc. 26, pp. 12-13; Doc. 26-3, pp. 4-5, 23, 29). It is difficult to imagine a clearer explanation for a termination. This, in conjunction with the lack of any comments regarding Subotic's national origin or ethnicity (aside from co-worker Marsala's innocuous, isolated comments that he did not like "ethnic" food), or evidence that any other employee made an unauthorized attempt to log in to Lane's account, led the district court to conclude there was insufficient circumstantial evidence to allow Subotic's discrimination claims to proceed to trial. (Doc. 39, pp. 36-38). Jabil's explanation for Subotic's termination is not vague or suspect simply because Subotic says it is. The district court properly granted summary judgment on the discrimination claims.

### C. The District Court Properly Determined There was Insufficient Evidence of Pretext for Subotic's Retaliation Claims to Survive Summary Judgment.

Finally, Subotic asserts that he "is not challenging the wisdom of Jabil's reasoning" with regard to his termination," when that is exactly what he is doing,

which is improper when engaging in a pretext analysis. (App. Doc. 27, p. 34). *Gogel*, 967 F.3d at 1149 (explaining that, to determine pretext, what matters is "what the employer in good faith believes the employee to have done, not whether the employee actually engaged in the particular conduct"); *see also Alvarez v. Royal Atl. Devs., Inc.,* 610 F.3d 1253, 1266 (11th Cir. 2010). Thus, Subotic's discussion of the allegedly "conflicting evidence as to whether a ticket is always required for a technician like Subotic to access another employee's computer" is of no import here, where "Jabil did not credit Subotic's explanations regarding login attempts and Subotic did not provide an excuse for the times he disabled Lane's computer," where "there is no evidence to dispute that Jabil had video that it believed showed Subotic alone sitting at his cubicle while one of the unauthorized login attempts was made from [his] computer," and where "Lane's description of other alleged inappropriate conduct by Subotic, including his showing up uninvited at her home more than once, understandably bolstered Jabil's belief that Subotic was responsible for attempting to access and disabling Lane's computer." (Doc. 39, pp. 25-26). The same goes for Subotic's arguments that Holton "was irritated when she received Subotic's email … accusing her of discriminating against him," that [n]o one investigated why another user's computer had also locked out Lane's account and whether there could be a security breach there" (which is also untrue, see Doc. 26-3, pp. 3-4), and that "[i]t is suspect that Doheny would not have interviewed Marsala about the Lane

34

Lockout Issue after Holton told Doheny that Marsala had assisted Lane in uncovering Subotic's purported security breach." (App. Doc. 27, p. 36). None of this goes to disprove Jabil's good faith belief that Subotic's conduct was improper under the Code of Conduct and Security Policy. *See Gogel*, 967 F.3d at 1149; *see also Alvarez,* 610 F.3d at 1266. The district court properly granted summary judgment on the retaliation claims.

## CONCLUSION

WHEREFORE, for the reasons set forth above, this Court should affirm the decision of the district court.

Date: May 22, 2023

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*/s/ Christina M. Kamelhair*
William E. Grob
Florida Bar No. 0463124
william.grob@ogletree.com
100 North Tampa Street
Tampa, Florida 33602
Telephone: (813) 289-1247
Facsimile: (813) 289-6530

Christina M. Kamelhair
Indiana Bar. No. 32457-49
christina.kamelhair@ogletree.com
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone: (317) 916-2144
Facsimile: (317) 916-9076

Attorneys for Appellee, Jabil, Inc.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 8,619 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4.

2.     This brief complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 32(a)(5)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2013 in 14-Point Times New Roman and 10.5-Point Times New Roman for footnotes.

Date: May 22, 2023                    OGLETREE, DEAKINS, NASH, SMOAK
                                       & STEWART, P.C.

                                      */s/ Christina M. Kamelhair*
                                      William E. Grob
                                      Florida Bar No. 0463124
                                      william.grob@ogletree.com
                                      100 North Tampa Street
                                      Tampa, Florida 33602
                                      Telephone: (813) 289-1247
                                      Facsimile: (813) 289-6530

                                      Christina M. Kamelhair
                                      Indiana Bar. No. 32457-49
                                      christina.kamelhair@ogletree.com
                                      300 North Meridian Street, Suite 2700
                                      Indianapolis, Indiana 46204
                                      Telephone: (317) 916-2144
                                      Facsimile: (317) 916-9076

                                      Attorneys for Appellee, Jabil, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of May, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Appellant's appeal counsel, Shaina Thorpe, ThorpeLaw, P.A., 1228 East 7th Ave., Suite 200, Tampa, FL 33605; shaina@thorpelaw.net.

I FURTHER CERTIFY that on this 22nd day of May, 2023, four copies of this Brief were transmitted to the United States Court of Appeals for the Eleventh Circuit via a commercial carrier for delivery within three days pursuant to Eleventh Circuit Local Rule 31-5 and Federal Rule of Appellate Procedure 25(C) at:

Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St. N.W.
Atlanta, GA 30303

*/s/ Christina M. Kamelhair*
Christina M. Kamelhair
Indiana Bar. No. 32457-49

56544544.v1-OGLETREE