CASE NO.: 22-13880-HH

BOYAN SUBOTIC,
Appellant,

v.

JABIL, INC.
Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
Case No.: 8:21-cv-2137-VMC-SPF

APPELLANT'S REPLY BRIEF

Shaina Thorpe
Florida Bar No. 55464

ThorpeLaw, P.A.
100 S. Ashley Drive, Suite 600
Tampa, Florida 33602
Tel: (813) 400-0229
Fax: (813) 944-5223
Email:    shaina@thorpelaw.net
               admin@thorpelaw.net

*Attorney for Plaintiff-Appellant Boyan Subotic*

Docket Number 22-13880-HH
*Subotic v. Jabil, Inc.*

# APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure Rule 26.1 and Eleventh Circuit Rule 26.1-2, Appellant Boyan Subotic, by and through undersigned counsel, hereby files his Certificate of Interested Persons and Corporate Disclosure Statement:

1. Covington, Hon. Virginia – District Court Judge

2. Creed, Dennis – Former Counsel for Defendant/Appellee

3. Creed Law Group, PLLC d/b/a Creed & Hall – Former Law Firm of Defendant/Appellee's Counsel

4. Flynn, Hon. Sean – Magistrate Judge

5. Grob, William E. – Counsel for Defendant/Appellee

6. Hall, Bradley – Former Counsel for Defendant/Appellee

7. Jabil, Inc. a/k/a Jabil Circuit, Inc. (NYSE Symbol: JBL) – Defendant/Appellee

8. Kamelhair, Christina M. – Counsel for Defendant/Appellee

9. Ogletree, Deakins, Nash, Smoak & Stewart, P.C. – Law Firm of Defendant/Appellee's Counsel

10. Subotic, Boyan – Plaintiff/Appellant

11. Thorpe, Shaina – Counsel for Plaintiff/Appellant

12. ThorpeLaw, P.A. – Law Firm of Plaintiff/Appellant's Counsel

>  */s/ Shaina Thorpe*
> Shaina Thorpe
> Florida Bar No. 55464
>
> ThorpeLaw, P.A.
> 100 S. Ashley Drive, Suite 600
> Tampa, Florida 33605
> Tel: (813) 400-0229
> Fax: (813) 944-5223
> Email:    shaina@thorpelaw.net
>           admin@thorpelaw.net
>
> *Attorney for Plaintiff-Appellant Boyan Subotic*

# **TABLE OF CONTENTS**

APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...................................................... C-1

TABLE OF CONTENTS .................................................................................... i

ARGUMENT ..................................................................................................... 1

I.     JABIL'S *AD HOMINEM* ATTACKS DO NOT CHANGE THE FUNDAMENTAL ERROR IN THE DISTRICT COURT'S REFUSAL TO CONSIDER THE RECORD EVIDENCE……………………………...1

II.     JABIL CROSSED THE LINE FROM BUSINESS JUDGMENT TO PRETEXT……………………………………………………………...5

  A. Holton Knew that Subotic did not Violate the On-Site Phone Policy . .................................................................................................................5

  B. Jabil did not Terminate Subotic based on a "Good Faith" Belief ......... 7

CERTIFICATE OF SERVICE ........................................................................ 14

# **TABLE OF CITATIONS**

**Cases**

*Hollingsworth v. Perry*,

   558 U.S. 183 (2010) ..................................................................................................2

*Johnson v. City of Fort Lauderdale, Fla.*,

   126 F.3d 1372 (11th Cir. 1997) ................................................................................1

*Kidd v. Mando Am. Corp.*,

   731 F.3d 1196 (11th Cir. 2013) ..............................................................................11

*Lombardo v. City of St. Louis, Missouri*,

   141 S. Ct. 2239 (2021)..............................................................................................3

*Smith v. Mercer*,

   1:09-cv-03008 (N.D. Ga. May 7, 2012) ...................................................................4

*Smith v. Mercer*,

   572 Fed. App'x 676 (11th Cir. 2014) .......................................................................3

*Tolan v. Cotton*,

   572 U.S. 650 (2014) .................................................................................................3

**Rules**

11th Cir. R. (Preamble) ....................................................................................................2

Fed. R. App. P. 28(e) .......................................................................................................4

Fed. R. Civ. P. 56(c)(1)(A) ..............................................................................................4

Fed. R. Civ. P. 56(c)(1) ................................................................................. 3

N.D. Ga. Loc. R. 56.1(B)(2)a.(1), (2) .......................................................... 3

# ARGUMENT

The arguments supplied in the Answer Brief filed by Appellee Jabil, Inc. ("Jabil") do not undercut the arguments in favor of reversal advanced by Appellant Boyan Subotic ("Subotic") in his Initial Brief. The sources cited by Jabil do not detract from the fundamental reasons why the district court's decision on summary judgment is due to be reversed. First, Jabil has not cited a single case that, upon scrutiny, supports the premise that a district court does not abuse its discretion in failing to consider record evidence because of its preference for citations to the very line of the deposition. Second, Jabil misapprehends several key aspects of the legal analysis in this discrimination and retaliation case. In particular, that questioning the legitimacy of the employer's belief that a violation of policy occurred is not the same as questioning the wisdom of the employer's reasons.

I. **JABIL'S *AD HOMINEM* ATTACKS DO NOT CHANGE THE FUNDAMENTAL ERROR IN THE DISTRICT COURT'S REFUSAL TO CONSIDER THE RECORD EVIDENCE.**

Jabil does not deny that the record citations provided by Subotic support his factual propositions or assert that the cited materials cannot to be located with ease. Thus, to be clear, Jabil's intention is to have this Court ignore record evidence because of a technicality that is a *preference* of a specific district judge. Subotic is not asking that any court "cull" the record to seek out evidence in his favor. *Johnson v. City of Fort Lauderdale, Fla.*, 126 F.3d 1372, 1373 (11th Cir. 1997). But to

disregard record evidence with plain and easy-to-follow citations on a district judge's *preference* is tantamount to a due process violation.

The Supreme Court has recognized the ability of district courts to issue such rules, albeit within limits, stating:

> A district court has discretion to adopt local rules. Those rules have "the force of law." Federal law, however, requires a district court to follow certain procedures to adopt or amend a local rule. Local rules typically may not be amended unless the district court "giv[es] appropriate public notice and an opportunity for comment."

*Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010)(internal citations omitted). The Supreme Court's position makes sense, as it balances the interests of litigants' access to the courts and due process rights with the courts' need for consistency and order. Thus, tribunals such as this Court adopt rules upon a vote and after judicial council meetings. 11th Cir. R. (Preamble).

The issue in this case is whether a failure to abide by a single judge's *preferences* warrants the district court's disregard for the record evidence, thereby trivializing Subotic's Seventh Amendment right to a trial by jury. To grant or affirm summary judgment on such as basis would not only render *Hollingsworth* meaningless, but would obviate the hard work of councils, committees, and public comments on rules. It would also be contrary to decades of precedent requiring that the district courts evaluate summary judgment evidence "in the light most favorable

to the nonmoving party." *See, e.g., Lombardo v. City of St. Louis, Missouri*, 141 S. Ct. 2239, 2240 n.1 (2021)(citing *Tolan v. Cotton*, 572 U.S. 650, 655–656 (2014)).

In the Answer Brief, Jabil supports the district court's enforcement of its preference and argues that Subotic "offers no case law to support his apparent proposition that a district judge's order somehow carries less weight than the court's local rules." (Answer Br. at 22.) Ironically, Jabil offers no legal authority to support its contention that a district judge's *preferences*, even if identified in an order, provide a permissible basis for the district court to ignore record evidence when considering summary judgment.

Quite the contrary—the cases cited by Jabil where record evidence was disregarded are cases where the disregard was for the local rules of the district—not judicial *preferences*. For example, in *Smith v. Mercer*, 572 Fed. App'x 676 (11th Cir. 2014), not only did the *pro se* litigant fail to comply with that district's local rules, but the citation failures are in no way comparable to what occurred here. In *Mercer*, this Court relied on the plaintiff's failure to comply with Federal Rule of Civil Procedure 56(c)(1) and Northern District of Georgia Local Rule 56.1(B)(2)a.(1), (2). *Id.* at 678. Notably, neither one of those citations are to the district judge's *preferences* (as in this case), nor do either of those rules require citations to *the line* of a deposition page.

Furthermore, the filings by the *Mercer* plaintiff in response to summary judgment are wholly different from those here. In *Mercer*, the plaintiff's response to the summary judgment statement of undisputed facts included absolutely no citations to the record *at all*. *Smith v. Mercer*, 1:09-cv-03008 (N.D. Ga. May 7, 2012). There was not an affidavit or deposition cited, let alone a deposition page or line number. *Id.* Simply stated, to equate the response containing no citations to the record whatsoever in *Mercer* with the precise, to-the-page citations in response to the motion for summary judgment in this case is nonsensical.

As previously noted, Jabil has not cited to a single case where a district judge's *preference* for citations to a line number in a deposition was held to be a sufficient basis for disregarding record evidence. The applicable Federal Rule of Civil Procedure does not mandate line number citations. Fed. R. Civ. P. 56(c)(1)(A) (material facts to be supported by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials…")). Even the Federal Rules of Appellate Procedure do not require line citations. Fed. R. App. P. 28(e).

The district court's error in disregarding the record evidence cited by Subotic based on its preference is so fundamental that it affects every part of the order on appeal and necessitates reversal.

## II. JABIL CROSSED THE LINE FROM BUSINESS JUDGMENT TO PRETEXT.

A *de novo* review of all of the record evidence reveals that there are questions of credibility and disputes of material fact that require a jury's determination. The record is rife with evidence of pretext, demonstrating that Jabil's alleged business judgment on the matters was not in "good faith" at all. Rather, ample record evidence shows that Natasha Holton ("Holton") intentionally discriminated against Subotic and when Subotic brought that discrimination to light, she retaliated against him by *de facto* firing him. Jabil sanctioned Holton's conduct and, in doing so, became liable for the consequences of her animus.

### A. Holton Knew that Subotic did not Violate the On-Site Phone Policy

Holton issued Subotic a disciplinary write-up for failing to carry the on-site phone when her own statement shows that he did not commit the violation. In Deanna Doheny's ("Doheny") August 3, 2020 interview of Holton, Holton states that "[t]here is an onsite phone […] It is expected that when the "early tech" arrives at 5:00 a.m., they carry this until 7:00 a.m. and then the techs decide who carries/answers after." (Vol. II at 258.) However, Subotic's disciplinary write-up for the on-site phone issue states: "At 7:15 a.m., [Subotic] was not carrying the onsite phone as was discussed and clarified previously on 7/9/2020 (please see attached email)." (*Id.* at 337.) Subotic was disciplined for not having the on-site phone at

7:15 a.m., despite Holton's own understanding that he would have only been required to carry it until 7:00 a.m.

Furthermore, Subotic was disciplined after Scott Marsala ("Marsala") reported the on-site phone issue to Andrew Eells ("Eells"). Neither Eells, nor Holton saw Subotic without the phone. Yet Subotic was disciplined on the word of Marsala, who, apparently was being treated as part of the managerial "we" by Holton. In her August 7, 2020 email with Doheny, Holton states: "I also checked the onsite phone. There is no way to see if people were carrying it aside from catching them without it on their person, as *we* did with [Subotic]. If [Marsala] was not carrying the phone, as [Subotic] has stated, he never brought it to my attention to address…" (Vol. II at 271-72.)(emphasis supplied). Even though there was no evidence outside of Marsala's report to Eells of Subotic failing to carry the on-site phone, Subotic was disciplined. By comparison, Marsala was not disciplined when Subotic told Doheny about Marsala not carrying the on-site phone, because she did not consider Subotic's report to be sufficient to prove that Marsala had violated the policy. (Vol. I at 103.)

It was simply not reasonable or in "good faith" for Jabil to have disciplined Subotic on the word of a co-worker while failing to discipline the co-worker on Subotic's word. As further discussed below, the record evidence shows that Jabil did not care to find out whether Subotic's report about Marsala was accurate. As the

evidence shows, the veracity of Jabil's belief that Subotic violated the on-site phone policy is a matter of credibility best decided by the jury.

### B. Jabil did not Terminate Subotic based on a "Good Faith" Belief

Without consideration for Subotic's record evidence, the district court determined that "Subotic failed to rebut Jabil's legitimate, nondiscriminatory [and/or non-retaliatory] reason for his termination." (Vol. IV at 771.) The evidence of pretext ranges from the minimal investigation of Subotic's discrimination claim compared to the investigation of the Lane Lockout Issue, to the shifting reasons for the termination, to the fact that the termination decision appears to have been made before Doheny even interviewed Subotic. Simply put, Subotic was not terminated because of Jabil's "good faith" belief that he violated a policy.

Jabil's discriminatory and retaliatory motives become clear when one contrasts the actions taken to investigate and evaluate Subotic's report of discrimination with the actions taken as to Holton's "off-the-books" investigation into Subotic. Discrimination is prohibited by a 4-page Jabil policy, wherein Jabil employees are assured that "[a]ll reports describing conduct that is inconsistent with this Policy will be investigated promptly and *thoroughly*." (Vol. II at 323-27.)(emphasis supplied). However, Doheny's investigation into Subotic's discrimination allegation of July 31, 2020 was anything but "thorough."

7

When Subotic reported Holton's discriminatory, disciplinary write-ups to Doheny, her investigation included the initial interview of Subotic and an interview of Holton, and no one else. As previously discussed, when Subotic asserted that Marsala had left the on-site phone on the desk and had not been written-up for it, Doheny claimed that she could not prove that Marsala had not been carrying the phone. There is no evidence that Doheny even asked Marsala if he had failed to carry the on-site phone or that Doheny obtained the video tapes from the week of July 13, 2020 to see if Subotic's complaint about the preferential treatment of Marsala could be substantiated.

By contrast, when investigating the July 2, 2020 alleged access attempt, Doheny was willing and able to retrieve the video recordings to see if Subotic was at his desk at the time of the alleged incident.[1] (Vol. II at 224, p.103, 253 p.217.) Doheny did not pull any video recordings to see whether Subotic had ever been around Tatianna Lane's ("Lane") desk to bother her, which is the reason she claimed Subotic was attempting to lock her out of her computer. (*Id.* at 240, p.167.)

---

[1] On August 12, 2020, Doheny noted that she had conferred with Jabil's legal counsel about Subotic's discrimination claims. (Vol. II at 264.) Even though Doheny appeared to have been aware that there was something about Subotic's claims that warranted discussion with legal counsel, she neglected to retain the video recording. (Vol. III at 459.)

For the discrimination investigation, Doheny only interviewed Subotic and Holton. In comparison, for the Lane Lockout Issue, Doheny interviewed Lane twice, as well as Holton, Subotic, and June Fing. (Vol. I at 148.)

A jury could also very well find that the decision to terminate Subotic was actually made on or before August 7, 2020, further undermining the legitimacy of Doheny's investigation and, as a result, her "good faith" belief that Subotic violated a Jabil policy. This is evidenced by the August 7, 2020 email between Doheny and Holton, wherein Holton states: "Also I don't see any IT policies, outside of the job description, that directly address ethical standards." (Vol. II at 271-72.) Thus, it would be reasonable to conclude that not only was Holton fishing for a policy to justify terminating Subotic, but she knew that she and Doheny intended to fire him as early as August 7, 2020. This means that there had been a decision to fire Subotic only a week after his report of Holton's discrimination and at least a week before Subotic was interviewed about the issue. This is entirely consistent with the fact that there is only one other email in the email chain between Doheny and Holton allegedly about the lockout issue after August 7, 2020.[2] (*Id.* at 271-78.)

The decision had been made. Doheny and Holton were no longer interested in determining whether Subotic had actually done what was alleged—they were just

---

[2] The email is a screenshot of a meeting invitation. (Vol. II at 271.)

9

looking for something they could use to justify his termination. The interview with Subotic on August 14, 2020 was a mere formality for a foregone conclusion.[3]

Additionally, the reasons given by Jabil for Subotic's termination have varied and are imprecise. This is intrinsically problematic for Jabil, in that it tends to show pretext on its own. However, the vagueness of the rationale for Subotic's termination also deprives Subotic of the chance to meet his burden. *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1205 (11th Cir. 2013)("Rather, the employer's reason need only be specific enough so that the 'plaintiff [is] afforded a full and fair opportunity to demonstrate pretext.'")

Contrary to Jabil's assertions, it is not clear what the actual violation of policy was that lead to Subotic's termination, which can be seen in the analysis on summary judgment. In addressing Jabil's legitimate, retaliatory reason for Subotic's termination, the district court summed-up its understanding of the reason as follows: "Subotic had attempted to log in to [Lane's] account four times and had disabled her computer twice, all without Lane submitting any IT ticket requesting service." (Vol. IV at 771.) But even that attempt at a summary falls short of clarity.

---

[3] A jury could also reasonably find that the disciplinary action given to another employee on the same day of Subotic's termination for not carrying the on-site phone was an intentional effort to buttress the legitimacy of Jabil's discipline of Subotic. (Vol. II at 233, p.138; Vol. I at 150.) This is especially true, as Jabil has not presented any other disciplinary actions subsequently to that date for the same issue with another Support Technician.

First, it is not discernable whether it was the alleged attempt to log-in to Lane's computer, itself, that was a problem or whether it was the lack of a ticket for the attempted log-in that was the problem. If the issue was that there was not a ticket that could be located for the attempted log-in, then it can be discredited with the record evidence that shows that many of Jabil's employees would obtain assistance from IT staff without a ticket. In fact, Lane *texted* Marsala for help with a lock-out and Marsala would regularly assist employees via "drive-bys." (Vol. III at 500, 538.)

If the existence or non-existence of a ticket is not the violation, then the violation must have been that Subotic did not access Lane's computer,[4] but attempted to and locked her out. But what policy did this violate? Holton, herself, did not know. (Vol. II at 271-72.) Furthermore, Eells testified that, due to Jabil employees having to change their passwords every 90 days, it was a frequent occurrence that individuals would get confused and get locked out of their computers. (*Id.* at 386.)

Jabil has presented one, overarching and vague basis for its termination of Subotic: that he violated "Jabil's Security Policy and Code of Conduct." (Answer

---

[4] In its February 12, 2021 position statement to the Equal Employment Opportunity Commission, Jabil states that it "terminated Subotic after confirming he clearly violated Jabil's Information Security Policy and abused his position by improperly *accessing* a female employee's computer on at least *five occasions* without authorization or any business justification." (Vol. II at 318.)(emphasis supplied). It appears that Jabil has since changed its rationale from actually "accessing" Lane's computer five times to "attempting to access" Lane's computer four times, where two of those attempts disabled her account. (*Compare id. with* Vol. I at 64 ¶ 42.)

11

Br. at 32-33.) Neither Jabil's Security Policy nor its Code of Conduct speak to what Jabil alleges Subotic did and Jabil's reasons are muddled. To wit: in one section of its Answer Brief, Jabil reiterates the three enumerated reasons for Subotic's termination. (*Id.* at 29.) These reasons are presented sixteen pages after a section entitled "HR Investigates Lane's Cyberstalking Complaint against Subotic"—which is not one of the three "official" reasons cited. (*Id.* at 13-15.)

Thus, it appears that Jabil is now classifying the alleged attempted access of Lane's computer as "cyberstalking" and a potential alternative reason for Subotic's termination. The term "cyberstalking" does not appear anywhere in the Motion or in the Order. (*See generally* Vol. I at 56-80, Vol. IV at 747-88.) Jabil claims that "it is difficult to imagine a clearer explanation for a termination," when, even now, Jabil cannot pinpoint its reason for terminating Subotic. (Answer Br. at 33.)

Instead of clarifying exactly how it is that what Subotic is accused of doing violates any specific Jabil policy, it argues that Subotic is questioning the wisdom of Jabil's decision. But the record evidence shows that Jabil cannot decide what reason to present as the lawful reason it fired Subotic. Jabil did not terminate Subotic on a legitimate, if mistaken, "good faith" belief that he violated a policy. Jabil terminated Subotic because he is a Serbian individual who reported his boss's discriminatory discipline of him.

Respectfully submitted this 26th day of June, 2023.

        */s/ Shaina Thorpe*
        **SHAINA THORPE**
        Florida Bar No. 0055464
        Primary:        shaina@thorpelaw.net
        Secondary:    admin@thorpelaw.net

        **THORPELAW, P.A.**
        100 S. Ashley Drive, Ste. 600
        Tampa, Florida 33602
        Telephone: (813) 400-0229
        Fax: (813) 944-5223

        *Counsel for Plaintiff-Appellant Boyan Subotic*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of June, 2023, a true and correct copy of this Brief was filed using the Court's CM/ECF system, which will automatically serve a notice of electronic filing on Defendant/Appellee at: William E. Grob, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 100 N. Tampa Street, Suite 3600, Tampa, Florida 33602, william.grob@ogletree.com.

I FURTHER CERTIFY that on this 26th day of June, 2023, four paper copies of this Brief were transmitted to the United States Court of Appeals for the Eleventh Circuit via a commercial carrier for delivery within three days pursuant to Eleventh Circuit Local Rule 31-5 and Federal Rule of Appellate Procedure 25(c) at:

> Clerk of Court
> U.S. Court of Appeals for the 11th Circuit
> 56 Forsyth St. N.W.
> Atlanta, Georgia 30303

*Shaina Thorpe*
Attorney